UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

THE VILLAGE AT KNAPP'S          Case No.: 13-06094
CROSSING, LLC,                  Chapter 11 – Filed: 07/30/2013
                                Converted – Ch. 7 – 06/09/2014

    Debtor.
_____/ /

**CORRECTED MOTION FOR SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363, AND TO ASSUME AND ASSIGN A LEASE PURSUANT TO 11 U.S.C. § 365 AT PUBLIC AUCTION**

    **NOW COMES** Lisa E. Gocha, Trustee ("Trustee"), by and through her attorneys, Rayman & Knight, and for her Corrected1 Motion for Sale of Real Property Free and Clear of Liens Pursuant to 11 U.S.C. §363 and to Assume and Assign a Lease Pursuant to 11 U.S.C. § 365 at Public Auction, Pursuant to Public Auction ("Motion"), says as follows:

**JURISDICTION AND VENUE**

    1.    That jurisdiction over this case and proceeding exist in this Court under 28 U.S.C. §1334(a) and (b) and by reference from the District Court in accordance with 28 U.S.C. §157(a). Determination of this Motion is a core proceeding, as defined in 28 U.S.C. §157(b), arising under the United States Bankruptcy Code (11 U.S.C. §101 *et seq*., "Bankruptcy Code").

    2.    Venue of this Motion is properly placed in this Court pursuant to 28 U.S.C. §1409(a).

    3.    This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A),(B)(E)(N)(O).

    4.    Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

---

1 This Corrected Motion is being filed to clarify the nature of the Debtor's lease with P.F. Chang's. Paragraphs 9, 10, 15, 21, and 34 have been modified as has the prayer for relief (paragraph C) and a footnote has been added to the Proposed Order.

1

5.      The basis for the relief requested herein are §§105(a), 363, 365, of Title 11 of the Bankruptcy Code.

## BACKGROUND

6.      This Motion pertains to the above-captioned Chapter 7 proceeding of The Village at Knapp's Crossing, LLC ("Debtor") which was originally filed as a Chapter 11 proceeding on July 30, 2013 ("Petition Date") and which case was converted to a case under Chapter 7 of the Bankruptcy Code on June 9, 2014.

7.      Your Trustee is the duly appointed and acting Trustee in this cause.

8.      Among the assets of this estate there exist certain real property and personal property located in the City of Grand Rapids, County of Kent, State of Michigan, more particularly described on Exhibit "A[2]" and commonly known as 3251 Knapp Street NE, whose tax parcel identification number is 41-14-11-301-068 ("Parcel 1"), 2110 East Belt Line Ave., NE, whose tax parcel identification number is 41-14-11-301-067 ("Parcel 2"), and 2200 East Belt Line Ave., NE, (aka 2065 Apple Orchard Ave., NE) whose tax parcel identification number is 41-14-11-301-066 ("Parcel 3") (collectively, referred to as "Real Property").

9.      In addition to being the owner of the Real Property, the Debtor is the lessor of Parcel 3 pursuant to a lease agreement with P.F. Chang's China Bistro, Inc. as the lessee ("P.F. Chang's"), a copy of the lease and the Agreement Relating to Modification from Automatic Stay and First Amendment to Lease is attached as Exhibit "B" ("Lease").

10.     The Trustee is holding the approximate current sum of $172,500.00 of funds paid by P.F. Chang's pursuant to the Lease which continues to grow ("Rent Received").

11.     Consistent with your Trustee's duties pursuant to 11 U.S.C. § 701 *et seq.*, your

---

[2] With the exception of the Proposed Order, all Exhibits that have been filed with this Motion have not been served. Any party who desires a copy of the Exhibits may contact the undersigned counsel via email at jsw@raymanknight.com or by the telephone number and address provided herein.

2

Trustee has received an offer to purchase the Real Property including the subject to the Lease from one Pioneer Venture's, LLC, a Michigan limited liability company ("Proposed Buyer").

12. The Proposed Buyer is the primary secured creditor with a first priority mortgage lien on the Real Estate having purchased the mortgage, note, and other obligations from the Debtor's pre-petition secured creditor, International Bank of Chicago ("IBOC").

13. In addition to the lien of IBOC previously purchased by the Proposed Buyer, the following parties claim a lien in the Real Property:

    a. P.F. Chang's, pursuant to the Lease;

    b. City of Grand Rapids for unpaid real estate taxes;

    c. Kent County Treasurer for unpaid real estate taxes; and

    d. City of Grand Rapids for unpaid utility bills and improvements.

14. The Real Property may also be subject to various rights of way, easements and restrictions including, but not limited to, the following as more fully identified in a certain Sun Title commitment for owner's policy of title insurance, attached as Exhibit "C" ("Title Commitment"):

    a. various rights of way to Michigan Bell Telephone Company;

    b. easement to Michigan Department of Transportation;

    c. the North East Beltline Joint Development Plan

    d. a Drainage and Overflow Easement;

    e. a Grand Rapids Public Utility Easement;

    f. a certain Restrictive Covenant Agreement;

    g. a Reciprocal Easement Agreement;

    h. a Memorandum of License;

      i.     various Restrictive Covenants; and

      j.     a Sidewalk Covenant ("Recorded Restrictions").

15.    The Real Property, along with the assignment of the Lease, shall be sold, assigned or otherwise transferred to the Proposed Buyer or other successful purchaser "AS IS" and subject to the Recorded Restrictions unless specifically delineated in this Motion and the Order approving the same. The successful purchaser of the Real Property shall be subject to the lease taking the same with all of its benefits and faults including but not necessarily limited to P.F. Chang's reservation of rights as described in paragraph 6 of the Agreement Relating to Modification from Automatic Stay and First Amendment to Lease ("P.F. Chang's Reserved Rights").

16.    The Proposed Buyer has made an offer to purchase the Real Property for the sum of $3,980,000.00 plus payment of any transfer tax, title insurance, survey costs or recording fees ("Initial Purchase Price") as set forth in the attached Purchase Agreement ("Agreement[3]").

17.    Generally, the Agreement provides:

    a.    That the Proposed Buyer shall pay the estate the Initial Purchase Price at closing for the Real Property, in the following matter:

        i.    $3,980,000.00 of the Initial Purchase Price shall be "paid" by the Proposed Buyer making a credit bid at sale pursuant to 11 U.S.C. § 363(k) and

        ii.   The Proposed Buyer shall also pay the sum of $250,000.00 ("Carve Out") to the estate, the Proposed Buyer and may, but is not required to, apply a portion of the Rent Received for this purpose.

    b.    In the event of additional bids, the Agreement provides:

        i.    The next highest bid above the Initial Purchase Price shall be $4,240,000.00, plus pay any transfer tax, title insurance, survey costs or recording fees ("First Subsequent Bid");

---

[3] The Agreement also provides that the IBOC claim, previously assigned to the Proposed Buyer, shall be allowed in the amount of $4,502,281.23 and that the Estate waives any 506(c) claims. (*See*, Exhibit "D").

  ii.  In the event there is a First Subsequent Bid the funds shall be distributed as follows:

    (A) $3,980,000.00 shall be paid to the Proposed Buyer;
    (B) $260,000.00 will be retained by the estate;
    (C) The Rent Received will be turned over to the Proposed Buyer;

  iii.  In the event of a bid higher than the First Subsequent Bid is made by the Proposed Buyer, the Proposed Buyer shall pay such amounts over $3,980,000.00 and shall be entitled to the Rent Received;

  iv.  In the event of a bid higher than the First Subsequent Bid is made by someone other than the Proposed Buyer; the Trustee shall pay to the Proposed Buyer the Sum of $3,980,000.00 and turnover the Rent Received. However, the Estate shall be entitled to the balance of the purchase price.

 c. That the Proposed Buyer has provided to the Trustee and agrees to allow the Trustee to make available to all prospective bidders, its due diligence which consists of the following documents:

  i.  Title Commitment;

  ii.  Final Phase I Environmental Site Assessment;

  iii.  Limited Phase II Sampling Results dated July 24, 2013;

  iv.  June 2013 Survey and 2009 Aerial Map

  v.  2012 Aerial Maps;

  vi.  Appraisal Report prepared by Allen & Associates dated July 23, 2013;

  vii.  Appraisal Report prepared by Metron Group dated June 28, 2013 ("Due Diligence[4]").

 d. That the real estate taxes that are due and payable shall generally be provided for in the Agreement as the Estate's responsibility for that real estate taxes for the current year that are not yet due and payable shall be prorated to the date of closing for the calendar year;

---

[4] Any party desiring a copy of the Due Diligence may contact the undersigned counsel via email at jsw@raymanknight.com or by the telephone number and address provided herein.

      e.    That the "Carve Out" will be applied to the following:

          i.    Kent County Real Estate Taxes (Estimated $19,033.70)[5];

          ii.    City of Grand Rapids Real Estate Taxes and utility charges (Estimated 28,704.67)[6]; and

          iii.    The Bankruptcy Estate of The Village at Knapp's Crossing, LLC.

      f.    That the proposed sale shall be subject to competitive bidding as described in this Motion.

18.    The Estate has engaged William W. Bussey, Jr., CCIM of Retail and Restaurant Site Advisors, LLC as realtor to aid the Trustee in the sale of this matter ("Realtor"). The Realtor has agreed to aid the Trustee as a consultant in this matter at the rate of $200.00 per hour (capped at $10,000.00) plus expenses.

19.    The Real Property has been under development for quite some time and has had considerable exposure to the market. Mr. Steven D. Benner testified at the 341 hearing that the Debtor had been looking for a partner for two years, and that the value of the Real Property would be around $3,500,000.00.

20.    Multiple parties have expressed interest in the Real Property and the Lease and the Trustee has received multiple offers. While unknown, the Trustee believes that through this Motion others may make higher and better offers. As such, the sale to the Proposed Buyer shall be subject to competitive bidding.

## SUMMARY OF RELIEF REQUESTED

21.    The Trustee seeks approval of this Motion to sell, pursuant to 11 U.S.C. § 363(b), the Real Property to the Proposed Buyer and to assume and assign the Lease subject to P.F.

---

[5] Only that portion which is attributable to Parcel 1 and Parcel 2, and not attributable to Parcel 3, will be paid by the Estate.
[6] Only that portion which is attributable to Parcel 1 and Parcel 2, and not attributable to Parcel 3, will be paid by the Estate.

Chang's Reserved Rights to the Proposed Buyer or to such other higher bidder as may be successful, pursuant to 11 U.S.C. § 365.

22.     The Trustee seeks the sale of the Real Property free and clear of liens, pursuant to 11 U.S.C. § 363(f).

23.     The Trustee seeks a finding that the Prospective Buyer is a good faith purchaser pursuant to 11 U.S.C. §363(m).

24.     The Trustee seeks authority to conduct an auction within 21 days of the Order approving this Motion and request a hearing to confirm the sale to a buyer other than the Proposed Buyer and to make findings for 11 U.S.C. §363(m) protection with respect to such successful bidder ("Subsequent Hearing").

25.     If the Proposed Buyer is the ultimate purchaser of the Real Property, the Trustee submits that there will be no need for a further Order with respect to this matter. In addition, if the ultimate purchaser not be the Proposed Buyer, but one that does not require a finding of good faith, similarly no further order should be required.

26.     The Trustee will file a Report of Sale prior to the Subsequent Hearing, indicating whether any further order will be required.

## **PROPOSED BUYER'S GOOD FAITH**

27.     The Proposed Buyer consummated a transaction with IBOC to purchase its secured loan to the Debtor, the secured guaranty of S.D. Benner, LLC, and the unsecured guaranty of Steven D. Benner ("Note Purchase").

28.     The Note Purchase was arm's length and upon information and belief, after speaking with agents of the Proposed Buyer, IBOC and another party interested in purchasing the same, there were at least two parties making offers to purchase secured loan of IBOC.

29. The Proposed Buyer's was formed by Sidney Jansma, Jr. Wolverine Gas and Oil Corporation, a Michigan corporation, is the sole member of the Proposed Buyer. The Proposed Buyer, Sidney Jansma, Jr. and Wolverine Gas and Oil Corporation have no connection with the Debtor, S.D. Benner, LLC, S.D. Benner, III, LLC or with its principal, Steven D. Benner.

30. The Initial Purchase Price is a fair value for the Real Property and for the assignment of the Lease.

## BIDDING PROCEDURES

31. If the Court grants this Motion, the Trustee shall conduct a public auction within 21 days at which time the following terms shall apply:

   a. All prospective bidders must be willing to sign a purchase agreement similar to the Agreement;

   b. The successful bidder must be prepared (at the date of the auction) to provide a deposit of $125,000.00 and provide sufficient evidence of ability to close in the sole discretion of the Trustee;

   c. The Trustee will take bids in any combination for Parcel 1, 2 or 3 or for the Real-Property as a whole, however the initial bid or bids for the Real-Property must total at least $4,240,000.00;

   d. Other than being subject to bankruptcy court approval, no contingent bids will be accepted;

   e. The sale shall be a cash basis;

   f. The Trustee reserves the right to accept a back-up bidder or bidders;

   g. The Proposed Buyer's credit bid rights shall be capped at $3,980,000.00;

   h. All bids over the initial bid of $4,240,000.00 shall be at least $5,000.00 more than the previous bid; and

   i. Any successful purchaser, including the proposed Buyer, shall take the Real Property subject to the lease and shall be responsible to perform under the Lease ("Bid Procedures").

32. The Real Property, and the Lease, shall be sold and assigned **"As is, Where is"**,

8

without representation or warranty, expressed or implied, of any kind or nature, or description, including, without limitation, any warranty of marketability, usability or fitness for any purpose. The Trustee shall not be required to inspect, test or report on the condition of the Real Property, the operability of any system(s) contained therein or the existence of any defects of any kind, including, environmental defects, as to the Real Property or the Lease.

## RELIEF REQUESTED

33. Your Trustee seeks approval of the sale of both Real Property subject to the Lease as set forth in the Agreement to the Proposed Buyer or to such other higher bidder, pursuant to 11 U.S.C. § 363(b), which provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

34. Your Trustee seek approval to assume and assign the Lease subject to P.F. Chang's Reserved Rights to the Proposed Buyer or to such other higher bidder, pursuant to 11 U.S.C. § 365.

35. The sale was negotiated at arm's-length through the Trustee's counsel and the Proposed Buyer after consultation with others including prospective bidders, real estate brokers and creditors and other parties in interest and is in the best interest of the Estate and should be approved for the following non-exclusive reasons:

    a. The Motion has the support of the Debtor's primary secured creditor;

    b. The Motion allows for the payment of all real estate taxes and liens in full or based upon agreed treatment;

    c. The Motion provides for a dividend to the bankruptcy estate;

    d. The Motion provides for a process which may increase the dividend to the bankruptcy estate;

    e. After completion of the sale of the Real Property, the Debtor

       retains additional property which may also be sold to provide a dividend to unsecured creditors; and

   f.   The Real Property is largely unused and the sale will allow for the development and highest use for the same.

36.   The Trustee seeks to sell the Real Property free and clear of liens, pursuant to 11 U.S.C. § 363(f), which provides that:

> the Trustee "may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> **(1)**   applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> **(2)**   such entity consents;
>
> **(3)**   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> **(4)**   such interest is in bona fide dispute; or
>
> **(5)**   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

37.   The Trustee seeks to sell free and clear of the following liens:

   a.   The mortgage in favor of IBOC, assigned to the Proposed Buyer;

   b.   All liens with respect to unpaid real estate taxes owed to the Kent County Treasurer;

   c.   All liens with respect to unpaid real estate taxes owed to the City of Grand Rapids;

   d.   All liens with respect to unpaid utilities owed to City of Grand Rapids for unpaid utility bills including repairs or improvements (collectively, "Secured Creditors");

   e.   Any and all claimed liens which are not of public record as of the petition date, July 30, 2013.

38.   The Trustee believes that she will obtain the affirmative consent of its Secured

Creditors as it has with the Proposed Buyer, and further, to the extent its Secured Creditors do not object to the sale, each should be deemed to have consented to the Sale. *See*, *FutureSource LLC v. Reuters Ltd.*, C.A.7 (Ill.) 2002, 312 F.3d 281, certiorari denied 123 S.Ct. 1769, 538 U.S. 962, 155 L.Ed.2d 513; *see also*, *Veltman v. Whetzal*, 93 F.3d 517, 520 (8th Cir.1996); contra, *see In re Roberts*, 249 B.R. 152, 154-57 (Bankr.W.D.Mich.2000). As such, the Trustee may sell the Real Property, pursuant to 11 U.S.C. § 363(f)(2).

39. The Real Property may be sold free and clear of the claims of Secured Creditors, pursuant to 11 U.S.C. § 363(f)(3). Pursuant to 11 U.S.C. § 506(a), the value of the Secured Creditors' liens is limited to the value of its collateral. As the value of the collateral is determined by the Sale, the Trustee may sell the Real Property, pursuant to 11 U.S.C. § 363(f)(3). (*See generally*, *In re Becker Indus., Inc.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986) and *In re Terrance Gardens park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989).

40. Each of the Secured Creditors is compelled to accept a money satisfaction of their lien rights, such as in a Chapter 11 Proceeding. As such, the Debtors may sell the Property, pursuant to 11 U.S.C. § 363(f)(5).

41. The Real Property may be sold free and clear of the claims of the Kent County Treasurer and the City of Grand Rapids as their claims will be paid in full. As such the property may be sold free and clear of their liens, pursuant to 11 U.S.C. § 363(f)(3).

42. The Real Property may be sold free and clear of the claims of any other party not appearing of record as of the Petition Date as such claims would be in *bona fide* dispute. *See*, 11 U.S.C. § 363(f)(4).

43. The Real Property may be sold free and clear of the claims of Secured Creditors pursuant to 11 U.S.C. § 363(f)(2)(3)(4)&(5) with liens attaching to proceeds in the same rank,

11

validity and priority as existed prior to the Petition.

**WHEREFORE**, your Trustee prays:

A.　　That this Court enter an Order[7] granting the Motion;

B.　　The this Court enter an Order approving the Bid Procedures;

C.　　That this Court enter an Order authorizing the sale of the Real Property as set forth herein at public auction, pursuant to 11 U.S.C. § 363(b) and the assumption and assignment of the Lease, subject to P.F. Chang's Reserved Rights, Pursuant to 11 U.S.C. § 365 to the Proposed Buyer or to such other higher bidder after public auction, for a sum equal to or greater than the Initial Purchase Price**.**

D.　　That this Court authorize the Trustee to accept a backup bidder for a sum equal to or greater than the Initial Purchase Price.

E.　　That this Court enter an Order, pursuant to 11 U.S.C. § 363(f), authorizing the Sale of the Real Property free and clear of all liens including the liens of the following creditors:

　　　　1.　　International Bank of Chicago;

　　　　2.　　Kent County, Michigan; and

　　　　3.　　City of Grand Rapids, Michigan.

F.　　That this Court enter an Order finding that the Proposed Buyer is in good faith pursuant to 11 U.S.C. §363(m);

G.　　That this Court enter an Order scheduling a Subsequent Hearing to confirm the sale to other successful bidder or bidders if necessary;

H.　　That this Court order and/or authorize the Trustee to execute such conveyance documents as are necessary to effectuate this transaction and make such payment(s) at closing as

---

[7] A proposed Order is attached.

are appropriate and consistent with this Motion;

      I.      That the Court authorize the Trustee to make payments to Secured Creditors; and

      J.      That this Court order such other relief that it finds just and equitable.

Respectfully submitted,

**RAYMAN & KNIGHT**
Attorneys for Trustee

Dated:  October 17, 2014      By:    \_\_\_\_\_/s/_____
Steven L. Rayman (P30882)
Cody H. Knight (P64811)

BUSINESS ADDRESS:
141 E. Michigan Avenue, Suite 301
Kalamazoo, MI  49007
Telephone:  (269) 345-5156